DECISION
{¶ 1} Relator, Emma Weil, has filed this original action in mandamus seeking a writ that compels respondent, Industrial Commission of Ohio, to vacate its order denying relator's February 12, 2001 motion to increase her average weekly wage and her full weekly wage in accordance with the "special circumstances" provision of R.C. 4123.61 and the "age and experience" provision of R.C. 4123.62(A). Relator also asks this court to require the commission to issue an order that complies with those statutory provisions.
{¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, and the magistrate rendered a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to establish that the commission had abused its discretion, and that this court should deny relator's request for a writ of mandamus.
{¶ 3} No objections to the decision of the magistrate have been filed.
{¶ 4} Finding no error or other defect on the face of the decision of the magistrate, pursuant to Civ.R. 53, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ of mandamus is denied.
Writ of mandamus denied.
LAZARUS and BROWN, JJ., concur.
HARSHA, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.
 APPENDIX A IN MANDAMUS
{¶ 5} In this original action, relator, Emma Weil, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's February 12, 2001 motion to increase her average weekly wage ("AWW") and her full weekly wage ("FWW") in accordance with the "special circumstances" provision of R.C. 4123.61 and the "age and experience" provision of R.C. 4123.62(A), and to enter an order that complies with those statutory provisions.
Findings of Fact:
{¶ 6} 1. On September 7, 1985, relator sustained an industrial injury while employed as part-time waitress for Frisch's Enterprises, Inc., a state-fund employer. Relator was twenty years old at the time of her industrial injury and was studying to take the GED, having dropped out of high school at age seventeen to have her first child.
{¶ 7} 2. After obtaining her GED, relator pursued college coursework and obtained a post-high school degree from "Great Oaks."
{¶ 8} 3. In October 1989, some four years after her injury at Frisch's, relator obtained a job as an office manager. During the years 1993 through 1997, relator had earnings of over $25,000 per year from her office manager job. In 1994, relator earned $27,133 at this job.
{¶ 9} 4. Apparently, in 1998, relator underwent surgery and was awarded temporary total disability ("TTD") compensation based upon her September 7, 1985 industrial injury. TTD compensation was apparently paid based upon relator's pre-injury earnings record at Frisch's.
{¶ 10} 5. On February 12, 2001, relator moved for an adjustment in her AWW and FWW based upon her post-injury earnings from her office manager job. Specifically, relator requested that her AWW and FWW be adjusted to $521.78 based upon her 1994 calendar year earnings ($27,133.11 | 52 = $521.79).
{¶ 11} 6. Following a May 4, 2001 hearing, a district hearing officer ("DHO") issued an order granting an adjustment of AWW and FWW to $400. The DHO's order states:
 The claimant's motion filed 2/12/01 to adjust the average weekly wage is granted pursuant to R.C. 4123.62. The District Hearing Officer finds that claimant was age 20 working as a part time waitress at the time of injury and was a 10th grade drop out. Since the injury the claimant has got a GED and 1 year of college and has a manager job with a home health care agency.
 Therefore, based on claimant's youth and experience the District Hearing Officer orders the average weekly wage reset at $400.00 to provide a reasonable basis for claimant's increased income estimated to be $20,000.00 and $27,000.00 in the 1990's since claimant got [an] education and a good job.
{¶ 12} 7. Relator administratively appealed the DHO's order.
{¶ 13} 8. Following a June 20, 2001 hearing, a staff hearing officer ("SHO") issued an order vacating the DHO's order and denying relator's February 12, 2001 motion. The SHO's order states:
 It is the finding of the Staff Hearing Officer that the claimant's age, education, experience at the time of her injury (i.e. 20 years old, 10th grade High School dropout and choosing to work part-time as a waitress), fails to constitute "special circumstances" under O.R.C. 4123.61 and O.R.C. 4123.62. Although, the claimant has since the industrial injury, acquired a high level of education and a better paying full-time job it is not established that her failure to do so earlier was due in any way to the industrial injury of 9-7-85. On the contrary, it appears that the industrial injury did not limit the claimant's abilities or potential, only that the claimant made a lifestyle change.
 Therefore, the Staff Hearing Officer orders that the Full Weekly Wage and the Average Weekly Wage be set according to the claimant's earnings for the year (52 weeks) prior to the date of injury, with exceptions being made for unemployment periods due to circumstances beyond the claimant's control (i.e. layoff, strike, illness).
 This order is based upon the O.R.C. 4123.61 and O.R.C. [4]123.62(A).
{¶ 14} 9. Relator administratively appealed the SHO's order of June 20, 2001. On July 27, 2001, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of June 20, 2001.
{¶ 15} 10. On October 31, 2001, relator, Emma Weil, filed this mandamus action.
Conclusions of Law:
{¶ 16} The issues are whether the commission abused its discretion with respect to the "special circumstances" provision of R.C. 4123.61 or the "age and experience" provision of R.C. 4123.62(A).
{¶ 17} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
{¶ 18} R.C. 4123.61 states:
 The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
 In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly wage of the claimant at the time of the injury or at the time disability due to occupational disease begins; when a factory, mine, or other place of employment is working short time in order to divide work among the employees, the bureau of workers' compensation shall take that fact into consideration when determining the wage for the first twelve weeks of temporary total disability.
* * *
 * * * [T]he claimant's or the decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
 In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
{¶ 19} R.C. 4123.62(A) states:
 If it is established that an injured or disabled employee was of such age and experience when injured or disabled as that under natural conditions an injured or disabled employee's wages would be expected to increase, the administrator of workers' compensation may consider that fact in arriving at an injured or disabled employee's average weekly wage.
{¶ 20} The magistrate shall first address R.C. 4123.62(A). Unfortunately, there is scant recent authority to guide this court on the application of R.C. 4123.62(A). However, Industrial Commission of Ohio v. Royer (1930), 122 Ohio St. 271, a case decided over seventy years ago, does provide the necessary guidance regarding the applicability of this statute. The Royer court interpreted Section 1465-84, a predecessor statute that read essentially the same as the current R.C. 4123.62(A). Regarding Section 1465-84, the Royer court stated:
 * * * In the absence of legislative interpretation, we are of the opinion that age and experience should only be considered in the case of persons of immature years, who have not yet become skillful in the particular employment in which * * * they were engaged at the time of the injury. Those terms should not be held to apply to all ambitious persons on the sole ground that they aspire to promotion in more important, more skillful, and more remunerative employment. * * * Id. at 276.
{¶ 21} In State ex rel. Valley Pontiac Company, Inc., v. Indus. Comm. (1991), 71 Ohio App.3d 388, this court had occasion to interpret R.C. 4123.62(A). This court stated:
 By its plain wording, the statute permits the commission to adopt a figure greater than the claimant's actual earnings when, under natural conditions, the claimant's earnings at the time of injury would be expected to increase. No party to this case has suggested that claimant's rate of pay would have substantially risen if the claimant was still in relator's employ. * * * Id. at 392.
{¶ 22} While this court did not cite to Royer in Valley Pontiac, this court seems to suggest, in accordance with Royer, that the "age and experience" provision is applicable only where it is shown that the injured worker would have become more skillful, and thus better compensated in the particular employment in which he was engaged at the time of his or her injury.
{¶ 23} In State ex rel. Blair v. Indus. Comm. (1993), Franklin App. No. 92AP-1015, this court states:
 * * * [W]e conclude that the "age and experience" provisions of R.C. 4123.62 may constitute "special circumstances" within the contemplation of R.C. 4123.61. Likewise, we find that the language of R.C. 4123.62(A) is not purely discretionary but, instead, places a duty upon the commission in determining average weekly wage.
 Although R.C. 4123.61 vests discretion in the Industrial Commission in determining special circumstances, such circumstances exist whenever "the average weekly wage cannot justly be determined by applying" the other provisions of R.C. 4123.61, in which event the commission is required to "use such method as will enable it to do substantial justice to the claimants."
 R.C. 4123.62(A) provides that, if at the time of injury an employee "was of such age and experience * * * as that under natural conditions his wages would be expected to increase, that fact may be considered in arriving at his average weekly wage." This does not vest a discretion in the commission to consider or not consider age and experience under such circumstances but, instead, vests the discretion in the commission to determine the effect, if any, the age and experience of the injured person has upon determining the appropriate average weekly wage. See Indus. Comm. v. Royer (1930), 122 Ohio St. 271. Thus, when present, the factors necessarily must be considered, although such consideration does not necessarily require a change in the average weekly wage that would otherwise be calculated by applying the provisions of R.C. 4123.61.
{¶ 24} Relying heavily on Blair, this court, in State ex rel. Tims v. Indus. Comm. (1995), Franklin App. No. 94AP-538, issued a writ of mandamus ordering the commission to vacate its order setting AWW and to issue a new order setting forth a new AWW calculation. In Tims, this court states:
 Relator's affidavits stated that she had spoken with her employer about a promotion to manager and that she had been asked to take over the running of the store with the possible increase of wages based on that position. Relator was twenty-four years of age on the date of her injury and had only worked seven weeks with Scotty's when she was injured. There was evidence before the commission that, on the date of her injury, relator was of such age and experience that her wages would be expected to increase. Although the commission is not required to accept relator's affidavit without questioning it, R.C. 4123.62(A) does require the commission to exercise its discretion to determine whether an increase in AWW is warranted given the evidence regarding relator's age and experience, Blair, supra.
{¶ 25} Given the above authorities, it is clear that R.C.4123.62(A) applies only when a person of immature years could have expected an increase in wages in the employment in which he or she was engaged at the time of injury.
{¶ 26} Accordingly, R.C. 4123.62(A) cannot be applied to the facts of the instant case. There is no evidence that, because of her age and experience, relator reasonably expected increased earnings at Frisch's.
{¶ 27} That relator was ambitious enough to obtain her GED, successfully pursue college course work, and thus obtain a better paying job as an office manager does not entitle her to an adjustment of her AWW or FWW under the Royer rationale.
{¶ 28} With respect to relator's claim to an abuse of discretion under R.C. 4123.61, this action is controlled by State ex rel. Cawthorn v. Indus. Comm. (1997), 78 Ohio St.3d 112. In 1986, Larry D. Cawthorn injured his lower back while employed as a dairy herdsman for Roger Bollinger. AWW was eventually set at $256 based on Cawthorn's earnings while working for Bollinger. Following the injury, Cawthorn obtained employment with a different employer, Producers Service, Inc. ("PSI"). While at PSI, Cawthorn re-injured his lower back. However, the injury was deemed an aggravation of his initial injury and no new claim was allowed. Compensation and benefits were paid in the Bollinger claim.
{¶ 29} Dissatisfied with the amount of compensation, in 1990, Cawthorn sought to increase his AWW to $521. Cawthorn submitted a W-2 tax form for 1989 to support his argument for an adjustment of his AWW. The commission denied Cawthorn's motion and he filed a mandamus action.
{¶ 30} After quoting R.C. 4123.61, the Cawthorn court states:
 The statute [R.C. 4123.61] is significant both for what it does and does not say. The statute provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings. Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's "special circumstances" provision. This we decline to do.
 "Special circumstances" is not defined, but special circumstances have "generally been confined to uncommon situations." State ex rel. Wireman v. Indus. Comm. (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267. We note at the outset that it is not uncommon for earnings to change during the course of an employee's career. To the contrary, it is generally anticipated. Id. at 114.
{¶ 31} Under Cawthorn, it is clear that relator cannot validly claim a right to an adjustment of her AWW or FWW based upon her post-injury circumstances presented here. She seeks an adjustment of her AWW or FWW based upon her earnings record established in a new occupation that she obtained many years after her industrial injury. It is certainly not uncommon for someone, at a relatively young age, to get on with her life after her industrial injury — to further an education and to obtain better paying employment. That is what happened here. While relator's post-injury efforts at bettering herself are commendable, they do not constitute special circumstances under R.C.4123.61.
{¶ 32} Clearly, relator failed to present a prima facie case for an adjustment of her AWW or FWW under the "age and experience" provision of R.C. 4123.62(A) or the "special circumstances" provision of R.C.4123.61. Thus, even if it can be argued that the reasoning of the SHO's order of June 20, 2001 is flawed, relator is not entitled to a writ of mandamus to correct the flaw. Relator cannot prevail on her February 12, 2001 motion to increase her AWW and FWW.
{¶ 33} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.